IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:21-CV-178-FL

| | | |
|---|---|---|
| JF FITNESS OF RICHMOND, LLC; JF FITNESS OF GLENEAGLES, LLC; JF FITNESS 3600, LLC; JF FITNESS OF VIRGINIA, LLC; FITNESS PARTNERS OF CAMERON VILLAGE, LLC; FITNESS PARTNERS OF BALLANTYNE, LLC; and FITNESS PARTNERS OF CREEDMOOR, LLC, | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | ORDER |
| v. | ) ) | |
| NOVA CASUALTY COMPANY, | ) ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 20). The issues raised have been briefed fully and, in this posture, are ripe for ruling. For the following reasons, defendant's motion is granted.

### STATEMENT OF THE CASE

Plaintiffs commenced this action on March 11, 2021, in Wake County Superior Court, and defendant filed notice of removal in this court on the basis of diversity jurisdiction on April 16, 2021. Plaintiffs assert breach of contract and seek declaratory judgment to determine questions of insurance coverage related to government-mandated suspensions of their businesses in response to COVID-19. Plaintiffs additionally seek compensatory damages and costs.

1

Defendant filed the instant motion to dismiss plaintiffs' claims on May 24, 2021, relying on a memorandum in support and an exhibit comprising relevant executive orders. The court stayed scheduling activities pending decision on the motion to dismiss. Plaintiffs responded, relying upon unpublished cases, and defendant replied. Defendant thereafter filed four notices of subsequently controlling decided authority.

## STATEMENT OF FACTS

The facts alleged in plaintiffs' complaint may be summarized briefly as follows. Plaintiffs own and operate seven Crunch Fitness workout facilities located in North Carolina and Virginia. (Compl. ¶ 2). Following a series of executive orders issued by state and local officials in response to COVID-19, plaintiffs were required to close their facilities and consumers were directed to stay home. (Id. ¶¶ 3, 4). As a result of those closures and directives, plaintiffs suffered a loss of income. (Id. ¶ 5).

Plaintiffs all maintained an insurance policy with defendant during the relevant period. (Id. ¶ 6). Pursuant to those policies, plaintiffs made claims for their losses. (Id. ¶ 8). Defendant denied those claims, asserting plaintiffs failed to demonstrate COVID-19 caused physical damage to covered property or, in the alternative, plaintiffs' claims were subject to the policies' virus exclusion. (Id. ¶¶ 45, 58).

## COURT'S DISCUSSION

A. Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

2

Case 5:21-cv-00178-FL   Document 33   Filed 03/18/22   Page 2 of 7

(2007)).[1]  "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B. Analysis

Defendant asserts that plaintiffs' claims are excluded by the virus exclusion included in each of their policies. The court agrees.

Under North Carolina and Virginia law,[2] the meaning of language in an insurance policy represents a question of law. Accardi v. Hartford Underwriters Ins. Co., 373 N.C. 292, 295 (2020); Seals v. Erie Ins. Exch., 277 Va. 558, 562 (2009). When interpreting such a policy, the court applies general rules of contract interpretation. Accardi, 373 N.C. at 295; see Seals, 277 Va. at 562. Pursuant to those rules, "[i]nsurance policies must be given a reasonable interpretation and where there is no ambiguity they are to be construed according to their terms." Williams, 269 N.C. at 238; see Blue Cross & Blue Shield of Virginia v. Keller, 248 Va. 618, 626 (1994) ("[A] court must adhere to the terms of a contract of insurance as written, if they are plain and clear and not in violation of law or inconsistent with public policy. It is not our function to make a new contract for the parties different from that plainly intended and thus create a liability not assumed by the insurer."). However, "[w]here there is ambiguity and the policy provision is susceptible of two

---

[1] Internal citations and quotation marks are omitted from all citations unless otherwise specified.

[2] In a diversity case, the court applies and interprets the substantive law of the state in which the action arose. See Adams v. Am. Optical Corp., 979 F.3d 248, 255 (4th Cir. 2020). For the purposes of the instant motion, the parties agree that North Carolina law applies with regard to properties located in North Carolina, and Virginia law applies with regard to properties located in Virginia. (See DE 21 at 9; DE 25 at 5 n.1).

interpretations, of which one imposes liability upon the company and the other does not, the provision will be construed in favor of coverage and against the company." Williams v. Nationwide Mut. Ins. Co., 269 N.C. 235, 238 (1967); see Seals, 277 Va. at 562 ("The courts . . . have been consistent in construing the language of such policies, where there is doubt as to their meaning, in favor of that interpretation which grants coverage, rather than that which withholds it.").

Here, plaintiffs' policies share an identical exclusion, providing in relevant part:

> We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(DE 1-1 at 86) ("the virus exclusion").[3]

Regarding the claims in issue, plaintiffs allege that "[p]ursuant to" executive orders by state and local officials directing residents to shelter in place and non-essential businesses to close or restrict operations, such as North Carolina's Executive Order 120 and Virginia's Executive Order 53, "[p]laintiffs were required to close their facilities." (Compl. ¶ 26; see Compl. ¶¶ 22-25). The governor of North Carolina issued Executive Order 120 pursuant to Executive Order 116, "which declared a [s]tate of [e]mergency to coordinate the [s]tate's response and protective actions <u>to address the Coronavirus Disease 2019 (COVID-19) public health emergency</u>," based on his conclusion "that local control measures for the emergency, taken alone, [were] insufficient to assure adequate protection for lives and property <u>because the scale of the COVID-19 emergency</u>

---

[3] Plaintiffs are insured under two commercial property insurance policies; however, both contain the same relevant policy language. Thus, for ease of reference, the court cites only to the policy issued to plaintiff JF Fitness of Richmond, LLC. (DE 1-1 beginning at 25).

[was] so great." (DE 21-1 at 2, 3 (emphasis added)).[4] The governor of Virginia similarly issued Executive Order 53 to clarify and expand COVID-19 related restrictions. (See id. at 6).

Thus, both executive orders that plaintiffs specifically allege caused their losses were in direct response to, and a direct result of, COVID-19. (Compl. ¶¶ 23, 24). Plaintiffs further allege that COVID-19 is a virus. (See id. ¶ 64, 65). As each policy excludes losses "caused by or resulting from any virus," defendant properly denied plaintiffs' claims pursuant to that exclusion. (DE 1-1 at 86); see Natty Greene's Brewing Co., LLC v. Travelers Cas. Ins. Co. of Am., 503 F. Supp. 3d 359, 363-64 (M.D.N.C. 2020) (considering a nearly identical exclusion and determining the same).

Plaintiffs' arguments to the contrary are unavailing. First, plaintiffs assert that "[i]t was th[e] [o]rders—and not the virus—that caused [p]laintiffs' business closures and losses." (DE 25 at 6). Where the orders were in direct response to the virus, however, plaintiffs draw a distinction without a difference. See Natty Greene's Brewing Co., LLC., 503 F. Supp. 3d at 363-64 ("While the [o]rders technically forced the [p]roperties to close to protect public health, the [o]rders only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community."). Relatedly, plaintiffs assert that the exclusion was intended to exclude from coverage only those losses resulting from contamination by a virus. (DE 25 at 8). In support, plaintiffs suggest that the virus exclusion be read together with the "fungus" exclusion, also included in the policies, such that it be understood as excluding only losses caused by the

---

[4] In considering a Rule 12(b)(6) motion, a court "may consider the complaint itself and any documents that are attached to it," CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009), as well as a document attached to defendant's motion to dismiss "if [the document] was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity." Am. Chiropractic v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004). Where the document attached to a defendant's motion to dismiss meets the "integral to" and unchallenged authenticity standard, "the district court properly treat[s] [the document] as if it had been attached to the complaint." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). Here, the complaint specifically references North Carolina Executive Order 120 and Virginia Executive Order 53 as examples of orders causing their alleged losses, thereby satisfying the requirement that the orders are integral and explicitly relied on in the complaint. (See Compl. ¶¶ 23, 24). Plaintiffs do not challenge the authenticity of the executive orders in their response.

"[p]resence, growth, proliferation, spread or any activity of" a virus. (DE 25 at 9). In effect, plaintiffs suggest that the court disregard the polies' separate treatment of viruses and fungi and simply plug the word "virus" into the exclusion for fungi. (Compare DE 1-1 at 86 (virus exclusion), with DE1-1 at 89 (fungus exclusion)). Particularly where the policy states that the virus and fungus exclusions are dealt with separately, such a reading is contrary to the plain meaning of the provisions. (See id. at 86 (providing in the virus exclusion that damage resulting from fungus "is addressed in a separate exclusion")).[5]

Finally, plaintiffs rely on extrinsic evidence, including an anti-concurrent causation clause that defendant could have alternatively used as well as the insurance industry's alleged misrepresentations to the Insurance Services Office ("ISO"). (DE 25 at 9, 12). However, such extrinsic evidence is only relevant if the policy language is ambiguous and here, for the reasons already mentioned, it is not. See Williams, 269 N.C. at 238; S. Ins. Co. of Virginia v. Williams, 263 Va. 565, 570 (2002); see also Adorn Barber & Beauty LLC v. Twin City Fire Ins. Co., No. 3:20CV418, 2021 WL 4851062, at *7 (E.D. Va. Oct. 18, 2021) (applying Virginia law and determining the same with regard to alleged misrepresentations to the ISO). Indeed, at least one other court in this circuit has already found a nearly identical exclusion to be unambiguous. See Natty Greene's Brewing Co., LLC, 503 F. Supp. 3d at 362-63.

---

[5] Plaintiffs also rely on Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co., 506 F. Supp. 3d 360 (E.D. Va. 2020) for the proposition that the policy be read to exclude only losses caused by contamination by a virus. That case, however, is inapposite as the policy in issue treated losses caused by fungi and virus within the same exclusion. See id. 378 ("The Fungi, Virus or Bacteria Exclusion specifically excludes losses from: (1) Growth, proliferation, spread or presence of 'fungi' or wet or dry rot; or (2) Virus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease; and (3) We will also not pay for ... (a) Any remediation of 'fungi', wet or dry rot, virus, bacteria or other microorganism."). Other federal courts have additionally identified Elegant Massage's interpretation of the policy's virus exclusion as a "notable outlier" among developing federal jurisprudence. Eye Care Ctr. of New Jersey, PA v. Twin City Fire Ins. Co., 522 F. Supp. 3d 72, 78 n.4 (D.N.J. 2021); see Bluegrass, LLC v. State Auto. Mut. Ins. Co., No. 2:20-cv-00414, 519 F. Supp. 3d 293, 298–300, (S.D. W. Va. 2021); LJ New Haven LLC v. AmGUARD Ins. Co., 511 F. Supp. 3d 145, 155, No. 3:20-cv-00751, n.7 (D. Conn. 2020).

Having determined that plaintiffs' insurance claims for their alleged losses are barred by the policies' virus exclusions, the court does not reach defendant's other arguments regarding whether plaintiffs' losses amount to physical damage entitling them to business income or civil authority coverage. (See DE 21 at 17, 23). However, the court notes that an increasing number of federal courts to address the issue have determined that physical loss or damage does not incorporate viruses. See Uncork & Create LLC v. Cincinnati Ins. Co., ___ F. 4th ___, 2022 WL 662986, at *6 (4th Cir. 2022) (applying West Virginia law); see, e.g., Adorn Barber & Beauty LLC, 2021 WL 4851062, at *8 (collecting cases).

## CONCLUSION

Based on the foregoing, defendant's motion, (DE 20), is GRANTED and plaintiffs' action is DISMISSED for failure to state a claim upon which relief can be granted. The clerk is DIRECTED to close the case.

SO ORDERED, this the 18th day of March, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge